

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1921 | **DATE** | 6/16/2003 |
| **CASE TITLE** | Ladonna Latkowski vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Claimant's motion for summary judgment [13-1] is denied and the Commissioner's motion for summary judgment [16-1] is granted. The decision of the administrative law judge is affirmed

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | JUN 1 7 2003 | |
| | Notified counsel by telephone. | | | date docketed | 20 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 03 JUN 16 PM 4:34 | date mailed notice | |
| DK | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |


## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LADONNA LATKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 02 C 1921** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | **Magistrate Judge Morton Denlow** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Claimant, LaDonna Latkowski ("Latkowski" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and denying her widow's benefits under 42 U.S.C. § 405(g). This case is before the Court on cross-motions for summary judgment. Claimant raises several issues for review, including: 1) whether the administrative law judge ("ALJ") improperly failed to give controlling weight to the opinion of Claimant's treating physician, 2) whether the ALJ's decision not to obtain a neurological consultation despite the medical expert's ("ME") recommendation was improper, 3) whether the ALJ's decision mischaracterized the Claimant's testimony, 4) whether the ALJ's hypothetical question to the vocational expert ("VE") was proper, 5) whether the ALJ's decision improperly failed to address testimony



from the VE that was favorable to the Claimant, and 6) whether this Court should reverse the decision of the ALJ because during the pendency of her request for review, Claimant became a person of advanced age and possibly entitled to benefits. For the following reasons, Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

## II. BACKGROUND FACTS

### A. PROCEDURAL HISTORY

Claimant filed an application for widow's insurance benefits on April 2, 1999, R. 99-101, alleging that she had been disabled since June 1, 1969. R. 100. She filed a duplicate application on August 20, 1999. R. 102-104.

Claimant's application was denied on June 4, 1999, R. 66, and again on reconsideration on September 13, 1999. R. 70-72. Claimant requested a hearing before an ALJ on September 15, 1999. R. 73. The hearing before ALJ Richard A. Pearson was held on November 3, 1999. R. 26-62. Claimant was represented by counsel at the hearing. R. 28. In addition to the Claimant, an ME, Dr. Irving Slott, and a VE, Edward Steffan, testified at the hearing. R. 26-62.

The ALJ issued a decision finding the Claimant not disabled on March 29, 2000. R. 11-25. Claimant filed a request for review of the ALJ's decision with the Appeals Council on April 10, 2000. R. 246-48. The Appeals Council denied Claimant's request for review. R. 8-10. Thus, the ALJ's decision became the final decision of the Commissioner.

Claimant filed a complaint seeking review of the Commissioner's decision in this Court on March 15, 2002. For some time thereafter, the record could not be located and the case was remanded to the Appeals Council. After the file was located, the case was reopened by the district court on January 22, 2003, and is now before the Court on cross-motions for summary judgment.

## B.    HEARING TESTIMONY

### 1.    Claimant's Hearing Testimony

Claimant testified at the hearing before the ALJ on November 3, 1999. R. 32. Claimant has petit mal seizures which began when she was nine years old, but she has had no seizures in several years. R. 33. She experienced some episodes in the past that she described as "passing out" which is not normal for petit mal seizure disorder. R. 34. She had one "pass out" episode fifteen years earlier. *Id.* She explained that she can not work because her medication makes her light-headed. R. 35. She becomes light-headed approximately one time per month for a few seconds. *Id.* She takes Primadone three times daily for her seizure condition. R. 33. She had no other physical impairments. *Id.*

Claimant has seen Dr. Anjum Hameeduddin as a primary care physician since 1994. R. 36. She sees Dr. Hameeduddin approximately once a year, although she saw her three times in 1998 and twice in the year preceding the hearing. *Id.*

In the fall of 1996, Claimant began experiencing pain in her right arm and wrist. R. 38. She had out-patient surgery by Dr. Anthony Brown in January 1997, R. 38-39, to relieve

3

carpal tunnel syndrome. R. 45. The surgery relieved some of the problem, but she still has difficulty grasping things with her hand. R. 38. Depending on the weight, she may be able to pick up a pitcher with water in it, but she has a problem turning jar lids. R. 40. She has no problem writing. *Id.* She can lift up to twenty pounds before having trouble. *Id.* At the same time she was experiencing pain in her right arm and wrist, she also experienced pain in her left. *Id.* Currently, she experiences wrist pain only when the weather changes. *Id.*

Claimant's daily activities include preparing and eating meals, watching TV, doing laundry, vacuuming, and all other housekeeping tasks. R. 41. She has no problems carrying a laundry basket to the washer. *Id.* Claimant walks to the grocery store approximately one and a half blocks from her home. R. 42. She can carry two small groceries bags home from the store. *Id.* She also listens to music, reads, and visits with friends throughout the day. R. 42-43. Claimant does not drive due to the medication. R. 43, 46. She relies on friends and family members for transportation. R. 43. Upon further questioning by counsel, Claimant indicated that the heaviest item she could lift was her vacuum cleaner; she approximated its weight between ten and twenty pounds. R. 60. Claimant had no problem lifting a pitcher of water with her right hand which she estimated at five pounds. R. 61.

Claimant was seen in the emergency room at South Suburban Hospital in 1998 because she was experiencing sharp pain in her leg. R. 44. She was treated with a shot that she believes was penicillin, and a Doppler x-ray was performed. *Id.* She was diagnosed with muscle spasms. *Id.* She still experiences sharp pain when the weather changes. R. 44-45.

4

Claimant also experiences swelling in her ankles. R. 45.

## 2. Medical Expert Testimony

Dr. Irving Slott, a physician specializing in internal medicine, testified as the ME. R. 46-50. Dr. Slott began by confirming Claimant's surgery on her right wrist for carpal tunnel syndrome. R. 46-47. Based on the Claimant's testimony and the medical records, he could not make a true evaluation. R. 47. The original chart he received before the hearing did not provide enough information. *Id.* He received a medical chart the day of the hearing indicating that Claimant suffered from petit mal seizures. R.47.

Instead of making an evaluation, Dr. Slott suggested that Claimant receive a consultation with a neurologist to address three issues: 1) the results and update of Claimant's wrist post carpal tunnel surgery, 2) the severity of the petit mal seizures in relation to Listing 11.03, and 3) to discover if there is nerve involvement in Claimant's leg pain. R. 48. Dr. Slott indicated that he could not find a listing that the Claimant currently meets, and that there are no other apparent impairments in the record. *Id.*

Upon further questioning from the ALJ, Dr. Slott indicated that the Claimant currently had a subjective impairment in her wrists which could be confirmed by an EMG. *Id.* The EMG would also determine if she had any deficit of the lumbrosacral spine causing the radiation of pain in her legs. *Id.* The ALJ confirmed that he thought a consultative examination should be completed, but indicated that he was not sure if it should be neurological, orthopedic, or otherwise, and expressed some doubt about his authority to

5

request an EMG evaluation. R. 49. The ME also recommended the possibility of fibromyalgia and the possibility of an orthopedic or rheumatology examination. *Id.* Upon questioning by Claimant's counsel, Dr. Slott indicated that he would suggest both an orthopedic and a neurological consultation. R. 50.

The only evaluation Dr. Slott made regarding Claimant's ability to stand, walk, and lift was that she should not be working in environment involving reaching too high, using a ladder, or anything involving heights. *Id.*

### 3. Vocational Expert Testimony

Edward Steffan testified at the hearing as the VE. R. 50-60. He responded to two hypothetical questions posed by the ALJ. The first hypothetical involved a 53 year-old woman with a high school education and no prior relevant work history. R. 51. The person was limited to lifting ten pounds frequently and twenty pounds occasionally, able to stand, walk, or sit for at least six hours in an eight hour work day, but not able to perform repetitive manipulative tasks either fine or gross with her hands (i.e. the person could do these hand manipulations occasionally or frequently, but not more than two-thirds of the work day). R.51. Finally, the person is not able to work at heights, temperature extremes, or with heavy moving machinery including driving. *Id.*

The VE responded that the hypothetical person would be able to complete several types of jobs. R. 52. For instance, she would qualify for a security officer position, of which there are over 5,000; customer service work, of which there are 3,000; or telephone operator,

depending on the intensity of the job, of which there are 4,000. *Id.* The VE indicated that although a telephone operator is required to push buttons frequently, the muscle activity required was low enough for the hypothetical individual to qualify. R. 53. The ALJ indicated that some types of heavy volume jobs might require more work. *Id.* The VE responded that there are a total of approximately 12,000 operator jobs, thus, his response of 4,000 jobs for which the hypothetical person would qualify adequately reflected a reduced number of jobs. *Id.* He also indicated that there were approximately 25,000 receptionist jobs in varying degrees of intensity. R. 53. He thought the hypothetical individual would qualify for approximately 5,000 of them. *Id.* The hypothetical person would also qualify for billing clerk type jobs, of which there are approximately 2,000 in the Chicago area. R. 55.

The ALJ asked a second hypothetical including the same factual limitations as the first, but further limiting the individual's ability to use her hands and arms for manipulative tasks only occasionally. R. 53. The VE responded that the person, given the lack of transferable skills, would be unable to perform any gainful employment. R. 54. He noted that the person may be able to qualify for a job such as a greeter at a department store, of which there are approximately 1,000 jobs. *Id.* She would not qualify for a restaurant hostess position due to the intensity of hand movements (handing out menus) during the dinner rush. *Id.* The person in the first hypothetical would be able to meet the requirements of this position, but the person in the second hypothetical would not. R. 55. There are approximately 3,000 of these jobs in the Chicago area. *Id.*

Claimant's counsel then questioned the VE regarding the ALJ's hypotheticals. R. 56-57. Counsel asked if the hypothetical answers would change if the person's standing was restricted. R. 56. The VE answered that the security officer position would be limited by approximately ten percent, the customer service (i.e. telephone operator and receptionist) position would not be limited, but the hostess position would be eliminated. R. 56-58. The VE further opined that if the hypothetical person was limited to standing only three hours per day, his answers would not change. R. 58. The only factor raised by counsel that would affect the hypothetical would be the person's inability to lift more than ten pounds either occasionally or frequently. R. 58. This would preclude any work other than sedentary. *Id.*

## C.   MEDICAL EVIDENCE

### 1.   Dr. Anjum Hameeduddin

Claimant has been treated by Dr. Anjum Hameeduddin since August of 1994. R. 166. The medical records indicate that she saw Dr. Hameeduddin for ongoing primary care including follow-up with her seizure medication, her carpal tunnel symptoms, R. 175, and other routine medical care. R. 168-75. Dr. Hameeduddin spoke with a Social Security representative on May 19, 1999 and indicated that Claimant was currently taking 250 milligrams of Mysolin three times per day for her seizures, and she had been seizure-free at least since seeing Dr. Hameeduddin beginning in 1994. *Id.* Dr. Hameeduddin further indicated that there was no need to complete an EEG because Claimant was seizure-free. *Id.*

In May of 1996, Claimant reported pain in her right leg; Dr. Hameeduddin assessed

8

it as tendinitis. R. 173. In September of that year, Claimant reported that she had pain in her elbow, which was assessed as bursitis. *Id.* Later in September, Claimant phoned Dr. Hameeduddin and indicated that after beginning the medication Feldene, she had swelling in her feet. R. 172. In October, Claimant complained of pain in her arms and hands due to bursitis. *Id.* Dr. Hameeduddin requested an x-ray of Claimant's hands and elbows. *Id.* The x-rays of both wrists were completed in November, 1996 and indicated no abnormalities. R. 243. In October of 1996, Claimant was still reporting pain in her hands; Dr. Hameeduddin assessed her pain as carpal tunnel syndrome. R. 171. Claimant had carpal tunnel surgery in January of 1997 and saw Dr. Hameeduddin that month for follow-up. *Id.*

Claimant again saw Dr. Hameeduddin in May of 1998 complaining of pain in her wrist when the weather changed; she also indicated that she becomes light-headed with her seizure medication. R. 170. Dr. Hameeduddin's assessment was tendinitis in the right wrist. *Id.* Claimant also saw Dr. Hameeduddin in July of 1998 after she had been to the emergency room at South Suburban Hospital complaining of pain in her upper left thigh and knee. R. 169.

Claimant was seen twice in February, 2000 after the hearing. R. 209. On February 1, 2000, Claimant complained that she had a swollen and painful right hand for the past week. *Id.* Dr. Hameeduddin assessed the hand with arthritis and prescribed Daypro. *Id.* Claimant returned the next week with the same complaint, and Dr. Hameeduddin requested an x-ray. *Id.* The x-ray revealed periarticular osteoporosis involvement in the metatarsal

phalangeal joints, but no bony erosions, no abnormal sclerosis, and minimal soft tissue swelling. R. 222. The indication was "questionable early findings of rheumatoid arthritis." *Id.*

Dr. Hameeduddin also completed a Physical Residual Functional Capacity Assessment ("RFC") in October of 1999. R. 192-99. In the RFC, Dr. Hameeduddin indicated that Claimant's primary diagnosis was seizure disorder. R. 192. She also indicated Claimant's exertional impairments; Claimant could: 1) occasionally lift ten pounds, 2) frequently lift ten pounds, 3) stand or walk for at least two hours in an eight hour workday, 4) sit for approximately six hours in an eight hour workday, and 5) push or pull for an unlimited amount of time. R. 193. Dr. Hameeduddin also noted that Claimant could climb, balance, kneel, crouch, or crawl only occasionally, but could stoop frequently. R. 194. Dr. Hameeduddin opined that Claimant could only climb a ladder occasionally because she may lose her balance. R. 194. She also indicated that Claimant was limited in her ability to finger and feel things due to her carpal tunnel syndrome and the weakness in her right hand, but Claimant was unlimited in her ability to reach and handle items. R. 195. Finally, Dr. Hameeduddin noted that Claimant should avoid concentrated exposure to extreme heat and cold, wetness, and humidity, and that she should avoid all exposure to hazards such as machinery and heights. R. 196.

### 2. Dr. Brown

Dr. Anthony L. Brown completed Claimant's carpal tunnel surgery; he also completed

an orthopedic consultation after the hearing. R. 200-04. On January 7, 2000, Dr. Brown indicated that Claimant's current complaint with her right wrist indicated that she had occasional discomfort when the weather changes and weakness in her grip. *Id.* In addition, he indicated that she had no other complaints regarding her musculoskeletal system. *Id.* His examination revealed full and equal motion of both shoulders, elbows, forearms, and wrists. R. 201. He also noted no swelling, tenderness or other signs of reaction, compete finger motion, and no signs of tendinitis. *Id.* There were no other abnormal indications. *Id.*

Dr. Brown also completed a Medical Assessment of Ability to Do Work Related Activities. R. 203-04. He indicated that Claimant could lift and carry up to 25 pounds continuously, up to fifty pounds frequently, and up to 100 pounds occasionally. R. 203. She could sit, stand, or walk for eight hours in a workday. R. 203-04. She could bend, squat, crawl, climb, or kneel continuously. R. 204. She could use both feet for repetitive movement, such as pushing and pulling leg controls, and she had no environmental restrictions. *Id.*

Because this examination was completed after the hearing, Claimant was given an opportunity to respond in writing. R. 206-07.

### 3. South Suburban Hospital

Claimant was seen in the emergency room of South Suburban Hospital in July 1998. R. 153-64. She complained of leg pain in her left thigh, groin, and upper left leg extending below the knee. R. 157. A venous doppler of the leg was completed revealing normal

results. R. 158. Claimant's diagnosis was acute musculoskeletal strain, and she was prescribed Toradol. *Id.*

### 4. Dr. Bruce Donnelly

In addition to the RFC completed by Dr. Hameeduddin, Dr. Bruce Donnelly, a non-treating, non-examining physician, also completed one on Septmenber 2, 1999. R. 181-88. He indicated that Claimant could occasionally lift 100 pounds or more and frequently lift fifty pounds or more; she could also sit, stand, and walk for approximately six hours in an eight hour day; and her pushing and pulling ability was unlimited. R. 182. He further noted that although she should only occasionally climb due to her seizure disorder, she could balance, stoop, kneel, crouch, or crawl frequently. R. 183. He indicated that Claimant should avoid concentrated exposure to hazards including large machinery, but she could withstand unlimited exposure to extreme heat and cold, wetness, humidity, noise, vibration, and odors. R. 185. He finally noted, "Except for staying away from ladders, ropes, and scaffolds and staying away from heights and open hazardous machinery, she is capable of working." R. 188.

## D. THE ALJ'S DECISION

The ALJ's decision followed the familiar five-step process. Claimant's application was for widow's benefits. At step one the ALJ found that the Claimant was not engaged in substantial gainful activity. R. 17.

At step two, the ALJ discussed the evidence of Claimant's seizure disorder and her

12

problems with carpal tunnel syndrome. R. 17-18. He found that Claimant had a distant history of seizure disorder and that she was status post carpal tunnel surgery. R. 19. He found these impairments severe under the Social Security Regulations. *Id.*

At step three, the ALJ found that the impairments, alone or in combination, did not meet or equal any impairments in the Listing of Impairments. *Id.* He adopted the findings of the state agency medical consultant's findings in the Disability Determination and Transmittal (R. 64). *Id.* The ALJ also relied on Dr. Slott's opinion, made after reviewing the medical evidence presented up to the time of the hearing, that the Claimant did not meet or equal the criteria for a listing. *Id.*

The ALJ noted that the applicable listing for seizure disorders requires ongoing seizure activity with frequency, and the Claimant admitted that she has not had any seizures in quite some time. R. 20. He also noted that the listing for rheumatoid arthritis requires "persistent joint pain, swelling and tenderness involving multiple major joints" and laboratory confirmation of the condition. *Id.* He found that Claimant's complaints could not be considered "persistent," and noted that the x-ray results indicating "questionable early findings of rheumatoid arthritis." *Id.*

At step four, the ALJ reviewed the Claimant's testimony regarding her epilepsy, carpal tunnel syndrome, and her activities of daily living. R. 20-21. He found that the Claimant was generally credible, but did not believe her impairments were so significant as to preclude all types of work-related activity. R. 21. He also reviewed the examination of

the orthopedic consultation which noted that Claimant retained nearly full-use of her right hand. *Id.* He found that Claimant was restricted to a wide range of light work activity. *Id.* She was limited to lifting and carrying ten pounds frequently and twenty pounds occasionally. *Id.* She could stand, walk, and sit for six hours each during an eight hour work day. *Id.* She could not perform repetitive tasks with her hands or be exposed to heights, driving, heavy machinery, or extremes in temperature. *Id.* The ALJ explained that Dr. Hameeduddin's opinion was not entitled to controlling weight because it was "not supported by Dr. Hameeduddin's own findings and observations as contained in his office notes. For instance, there is no objective evidence whatever in the record to warrant a finding that [Claimant's] ability to stand or walk is limited, or that she can only occasionally engage in activities such as climbing stairs, kneeling or crouching." *Id.* At step four the ALJ found that Claimant had no past relevant work. R. 22.

At step five, the ALJ reviewed the testimony of the VE and found that Claimant qualified for significant number of jobs. R. 23. She qualified for 5,000 security officer jobs, 4,000 telephone operator jobs, 3,000-5,000 receptionist jobs, 3,000 hostess jobs, and 2,000 billing clerk jobs. *Id.* Thus, the ALJ found that Claimant was not disabled and not entitled to benefits. R. 23.

## III. LEGAL STANDARDS

### A. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g),

which provides that the findings of the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even if there is adequate evidence in the record to support the decision, the findings will not be upheld if the "reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

A reviewing court may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence to support the findings. *Id.*; *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The reviewing court has the power to enter a judgment "affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## C.   DISABILITY STANDARD

A disabled individual is eligible for disability insurance benefits ("DIB") if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 42

U.S.C. § 423 (d)(1)(A).

The Commissioner uses a five-step sequential process in order to determine if an individual is disabled. 20 C.F.R. § 404.1520(a). The sequential evaluation ends if the ALJ, at any step of the process, finds that the claimant is not disabled. *Id.* The ALJ must inquire: (1) whether the claimant is working and the work is substantial gainful activity, (2) whether the claimant's impairment is severe, (3) whether the impairments meet or equal a listed impairment in 20 C.F.R., pt. 404, subpt. P, Appendix 1, (4) whether the claimant is able to perform his past relevant work, and (5) whether the claimant's age, education, and past relevant work experience in reference to his residual functional capacity, enables him to do other work. 20 C.F.R. § 404.1520 (b)-(f). In order to determine whether the claimant can perform any past relevant work (step 4), the ALJ assesses the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is defined as the most that an individual can do after considering the effects of physical and mental limitations that affect her ability to perform work-related activities. 20 C.F.R. § 404.1545. The burden of proof is on the claimant through step four; the burden shifts to the Commissioner only at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## IV. ANALYSIS

The Claimant raises several objections to the ALJ's decision; the Court will discuss each in turn. Claimant argues that: 1) the ALJ erred by not giving controlling weight to the RFC completed by Claimant's treating physician, 2) the ALJ improperly failed to order a

neurological consultation as recommended by the ME, 3) the ALJ made factual errors regarding the Claimant's testimony of pain, 4) the ALJ's hypothetical to the VE did not accurately reflect all of the medical evidence in the record, 5) the ALJ's decision improperly failed to address the VE's testimony that was favorable to the Claimant, and 6) even accepting the ALJ's finding on the RFC, Claimant should now be found disabled because she has reached advanced age.

## A.    THE ALJ DID NOT ERR IN REFUSING CONTROLLING WEIGHT TO THE RFC OF THE TREATING PHYSICIAN.

Dr. Hameeduddin saw the Claimant on a periodic basis beginning in 1994 and treated her for various physical ailments including the follow-up with her seizure medication, pain in her hands and arms, and pain in her legs. Thus, Claimant argues that her opinion was entitled to controlling weight.

A treating physician's opinion "regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by the medical findings and not inconsistent with other substantial evidence in the record." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2001)); 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

The ALJ's decision stated that he did not give Dr. Hameeduddin's opinion controlling

weight because it was "not supported by Dr. Hameeduddin's own findings and observations as contained in his office notes. For instance, there is no objective evidence whatever in the record to warrant a finding that Ms. Latkowski's ability to stand or walk is limited, or that she can only occasionally engage in activities such as climbing stairs, kneeling or crouching." R. 21. In addition, the ALJ noted that Dr. Hameeduddin's assessment was contrary to the Claimant's statements and the statements of Dr. Brown. R. 22. Claimant stated that she could walk to the grocery store and do laundry and housework without impairment. Furthermore, as the Commissioner points out, in a telephone interview with a Social Security representative, Claimant stated that she tended to her garden, completed other yard work, and baby-sat her grandchildren. R. 151-52.

Finally, the ALJ did not fully credit Dr. Brown's assessment of the Claimant's RFC. Both Dr. Brown and Dr. Donnelly opined that Claimant could lift up to 100 pounds occasionally, and fifty pounds frequently. R. 203, 182. The ALJ stated that this assessment was "totally inconsistent with the overall evidence." R. 22.

The ALJ found that Claimant was able to lift ten pounds frequently and twenty pounds occasionally. R. 21. She was able to stand, sit, or walk for six of eight hours in a workday. *Id.* She was not able to perform repetitive tasks with her hands or be exposed to heights, heavy machinery, or extremes in temperature. *Id.* Given the lack of objective evidence, the opinions of other professionals, and Claimant's own testimony, this Court cannot say that the ALJ's decision was not supported by substantial evidence. Because Dr. Hameeduddin

offered no clinical evidence to support her conclusions on the Claimant's postural limitations, and her report was contradicted by two others and the Claimant's own testimony, the ALJ did not err in refusing to give her controlling weight.

## B. THE ALJ WAS NOT REQUIRED TO OBTAIN A NEUROLOGICAL CONSULTATION.

Claimant next argues that the ALJ improperly substituted his own opinion for that of a medical professional when he completed his decision without obtaining a neurological examination as suggested by the ME.

Although the ALJ may not substitute his own judgment for that of a medical expert, *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), he is not required to obtain a consultive exam in every situation. 20 C.F.R. § 404.1519a. Consultive exams are used for resolving a conflict or ambiguity and are required when: 1) additional evidence is needed, but not contained in the medical evidence, 2) evidence is available from a treating source, but can not be obtained, 3) highly technical information is needed but unavailable from a treating source, 4) conflicts, inconsistencies, or ambiguities must be resolved, or 5) evaluating a change in the claimant's condition affecting his ability to work is necessary. *Id.*

In this case, the ME stated that he could not make a full evaluation because the medical records were incomplete. R. 47. He suggested instead that the ALJ obtain a neurological evaluation to address three issues: 1) the status of Claimant's carpal tunnel syndrome post-surgery, 2) the severity of the petit mal seizures compared to the requirements of the applicable listing, and 3) whether the pain in Claimant's leg was related to a nervous

system condition. R. 48. The transcript of the proceeding indicates a conversation between the ME and the ALJ about what type of consultation would be obtained, R. 48-49; the ALJ never affirmatively indicated that he would obtain a neurological evaluation to address the issues. *Id.*

Although a consultive evaluation may have met the goal of resolving an ambiguity, there appears to be no ambiguity regarding Claimant's seizures and leg pain. Petit mal seizure disorder will be considered a disability under Listing 11.03 if it is documented by a "detailed description of typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Claimant presents no evidence that her seizure disorder rises to this level. She has had no seizures since 1994. R.166. Furthermore, Dr. Hameeduddin stated in a telephone conversation with a Social Security representative that "There has been no reason to do an EEG because she has been seizure free." *Id.* Claimant does not argue, and the Court finds no ambiguity in whether the Claimant's seizures met Listing 11.03. They do not. The ALJ did not err in failing to obtain a consultive exam for this purpose.

According to the ME, the second reason to obtain the neurological consultation was to discover whether the Claimant's leg pain was caused by nerve problems. R. 48. The

purpose again would have been to resolve any ambiguity present. Here, again, there is no ambiguity. After testifying about her seizure disorder, Claimant stated that she had no other impairments. R. 35. She later stated that she had pain in her legs and swelling in her ankles at times, but there is no evidence that this rises to the level of an impairment. The objective evidence indicates that Claimant was seen in July of 1998 in the emergency room because of the pain in her legs. R. 153-64. The diagnosis was acute musculoskeletal strain. R. 158. There is no other objective evidence that the leg pain was a problem for Claimant on more than an occasional basis at the time of the hearing.

Furthermore, the Claimant's testimony of her activities included light housework, walking to the grocery store and carrying groceries home, R. 42, and her statements in a phone interview with a representative from Social Security that she enjoys tending to her garden, doing yard work, and baby-sitting her grandchildren, R. 151, belie an indication that this is a severe impairment of her legs.

Finally, the ALJ obtained a consultive examination in order to evaluate Claimant's wrist post carpal tunnel surgery—the final purpose suggested by the ME. The evaluation was completed by the orthopedic surgeon who completed the surgery, Dr. Brown. He included specified documentation indicating Claimant's range of motion to support his opinion. R. 202. Although Claimant disagrees with his interpretation of his findings, she does not argue that his evaluation itself was incomplete, or improper in any way. This examination resolved any ambiguity present in the medical records. Absent contrary objective evidence, this Court

finds that the ALJ's failure to obtain a consultive examination by a neurologist was not an improper substitution of his judgment for that of a medical professional. The Court concludes that the decision of the ALJ was supported by substantial evidence.

### C. THE ALJ'S FACTUAL ERRORS INTERPRETING CLAIMANT'S TESTIMONY WERE HARMLESS.

Third, Claimant argues that the ALJ's misinterpretation of her testimony at the hearing led to an erroneous decision. Claimant testified that at same time she was experiencing pain in her right wrist due to carpal tunnel syndrome, she also experienced pain in her left arm and hand. R. 40. Currently, she experiences pain in her wrists when the weather changes. *Id.* The ALJ interpreted this as, "she had problems with left hand soreness about the time of her surgery, although she admitted the pain has all but resolved, except during periods of extreme weather." R. 20. Claimant argues that the weather in Chicago is almost always changing; thus, pain in changing weather occurs more often than pain in extreme weather. In addition, Claimant argues that the ALJ ignored her testimony that she has trouble holding and object and turning jar lids. The ALJ also found that the Claimant has trouble holding onto heavy items "weighing more than twenty pounds." R. 20. Claimant argues that this is a misinterpretation of her testimony which stated that she would have trouble holding on to an item weighing twenty pounds which was later modified to twelve pounds – the weight of her vacuum cleaner. Claimant points out that a person who has problems lifting twenty pounds is precluded from light work, while a person who has trouble lifting *more than* twenty pounds is not precluded from light work.

The ALJ found that Claimant's RFC included the ability to lift ten pounds frequently and twenty pounds occasionally. This finding is significantly reduced from the amounts that both Drs. Brown and Donnelly stated Claimant could lift. Both doctors indicated that Claimant could lift fifty pounds frequently and 100 pounds occasionally. R. 182, 203. Although Claimant's treating physician indicated that she could lift only ten pounds frequently and occasionally, Claimant herself indicated that she could lift her vacuum cleaner on a recurring basis which weighed twelve pounds. Moreover, Dr. Brown found nothing remarkable in his orthopedic exam of Claimant's right hand. R. 201.

Claimant finally argues that the ALJ's finding that she was generally credible is inconsistent with his finding that she was frequently capable of lifting twenty pounds. These statements, she argues, are irreconcilable and make the ALJ's decision irrational. This Court disagrees. The ALJ's decision states, "The claimant was generally forthright in and credible in her testimony. . . . However, she did not attest to pain and/or other limitations so significant as to preclude all types of work activity." R. 21. Claimant stated in her testimony that something would have to be twenty pounds before she would have trouble lifting it. R. 40. She later amended her testimony to state that the heaviest thing she could lift was her vacuum cleaner, and only after the hearing did her attorney submit a statement that the vacuum weighed twelve pounds. The ALJ specifically noted the reduced weight of the vacuum in his decision. R. 20.

Based on the evaluations of Drs. Donnelly and Brown and Claimant's statements

about her experience of occasional pain and swelling, it was not unreasonable for the ALJ to conclude that she was "generally" credible. The ALJ's finding was supported by substantial evidence and not irrational.

### D. THE ALJ'S HYPOTHETICAL TO THE VE REFLECTED THE EVIDENCE AS HE CREDITED IT.

Claimant originally argued that the ALJ's hypothetical to the VE did not fully reflect the medical evidence in the record. However, at oral argument, Claimant conceded that if the Court found substantial evidence supported the ALJ's RFC findings, then the hypothetical to the VE was proper.

In the Seventh Circuit, a proper hypothetical to the VE need only be "supported by the medical evidence in the record." *Cass v. Shalala*, 8 F.3d 552, 555-56 (7th Cir. 1993). At one point the Circuit raised the bar by requiring that a proper hypothetical "fully set forth the claimant's impairments to the extent they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). Currently, it is not clear whether the Seventh Circuit follows the more or less stringent test. See *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (stating that hypothetical posed to the VE must include "*all* limitations supported by the medical evidence in the record," but citing cases in which the lesser standard was used); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (citing the lesser standard).

The medical evidence at the time the hypothetical questions were asked, consisted of Dr. Donnelly's RFC, Dr. Hameeduddin's records and RFC, and the records from the

24

emergency room visit to South Suburban Hospital. Because Claimant conceded this issue at oral argument, the Court declines to address it further.

### E.    THE ALJ'S FAILURE TO DISCUSS THE SECOND HYPOTHETICAL WAS NOT IMPROPER.

Claimant argues that the second hypothetical to the VE based on Dr. Hameeduddin's RFC was not discussed in the ALJ's decision. She argues that his failure to discuss evidence favorable to her claim was improper. The Court recognizes that the ALJ did not discuss the results of the second hypothetical in his decision.

Although the ALJ is not required to discuss his reasons for rejecting every item of evidence; he must, however, at least minimally discuss the claimant's evidence that contradicts the Commissioner's decision. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). Here, the ALJ extensively discussed Dr. Hameeduddin's records and the laboratory results of x-rays, and other tests completed. R. 18-19. The only thing he did not discuss in his opinion was the VE's responses to a hypothetical based on facts that, clear from his decision, he did not credit.

The ALJ discussed evidence favorable to the Claimant, and he was not required to discuss the VE's answer's to a hypothetical based on facts he did not credit.

### F.    THE COURT HAS NO JURISDICTION TO REVERSE THE ALJ'S DECISION BASED ON CIRCUMSTANCES OCCURRING AFTER THE HEARING.

Claimant finally argues that even if the ALJ's findings regarding her RFC, age, education, and relevant work experience are correct, she is entitled to benefits. At the time

of the ALJ's decision, Claimant, a 53 year-old woman, was a person closely approaching advanced age. 20 C.F.R. § 404.1563. The ALJ found that she had no past relevant work experience, a high school education, and had the RFC for a limited range of light work. R. 21.

Claimant requested review before the Appeals Council and was denied. She filed a complaint with this Court which was delayed and remanded to the Appeals Council because the Commissioner could not locate the record. Before her complaint was filed with the district court, Claimant turned 55 years old, making her a person of advanced age.

According to the regulations, a person closely approaching advanced age with a high school education, and unskilled or no previous work experience is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App.2. A person of advanced age, however, with the same education and work experience is considered disabled. *Id.* Furthermore, the regulation states, "individuals of advanced age who . . . have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, R. 202.00 (c).

Thus, Claimant argues that even if the ALJ's findings regarding her RFC, age, education, and experience are correct, he should be reversed due to the subsequent change in circumstances. Claimant raised this issue in her complaint to the district court, a copy of which was served on the Commissioner. After her case was remanded to the Appeals Council, Claimant's attorney also wrote a letter to the Council raising this issue and

requesting the Council to reverse the ALJ's decision.[1]

This case is similar to *Lively v. Sec'y of Health & Human Svcs.*, 820 F.2d 1391 (4th Cir. 1987). The claimant in *Lively* applied for disability benefits and was denied at the age of 54 years old. 820 F.2d at 1391-92. The ALJ found that he was capable of light work only. *Id.* at 1391. Several weeks after the ALJ's unfavorable decision, the claimant turned 55 years old, and he filed a second application for benefits two years later. *Id.* at 1392. The second application also resulted in a finding that the claimant was not disabled, but failed to address the earlier finding that he was limited to light work. *Id.*

On appeal, the issue was whether the principles of *res judicata* applied, making the functional capacity determination of light work in the first hearing binding on the second. *Id.* The court found that *res judicata* did apply and concluded that "[b]ecause the applicant was limited to light work when he attained 55 years of age, he was entitled to benefits on his second application therefor." *Id.*

Although factually similar, the case is distinguishable in two important ways. First, the claimant in *Lively* turned 55 years old in a very short time after the initial application was denied – two weeks. *Id.* at 1392. Second, he filed a second application for disability benefits. *Id.* at 1391. The Claimant here, turned 55 in August of 2001, almost two years after the hearing before the ALJ took place. Furthermore, she never filed a second

---

[1] At oral argument, Claimant acknowledged that this letter was not a part of the record, but presented the letter to the Court and sought leave to supplement the record with the letter. The Commissioner had no objections, and the Court granted Claimant leave to supplement the record.

application for benefits.

The Seventh Circuit has held that when the Appeals Council has denied review, evidence submitted for the first time to the Council, although part of the record, cannot be considered in determining the correctness of the ALJ's decision. *Diaz v. Chater*, 55 F.3d 300, 305 n. 1 (7th Cir. 1995). The court also stated that it could conduct a limited review of the newly submitted evidence when the claimant alleges that the Appeal's Council's refusal to review the ALJ's decision was a mistake of law. *Id.*

Here, the Claimant did not raise this issue in her request for review before the Appeals Council because she had not turned 55 years old at the time. She did, however, raise it when the case was remanded to the Council. This case was remanded to the Council because the Commissioner lost the record. The Court finds that the Commissioner bears some culpability for the protracted nature of this case.

Unfortunately, this Court's jurisdiction lies in 42 U.S.C. § 405(g), which allows a district court to review the final decision of the Secretary. When the Appeals Council denies review of the case, the decision of the ALJ is the final decision of the Secretary. Thus, the Court has only the power to review the decision of the ALJ under the substantial evidence standard. 42 U.S.C. 405(g). The Court finds that it does not have jurisdiction to remand or reverse the case back to the ALJ based on facts not in evidence at the time he made his decision.

## V. CONCLUSION

The ALJ did not err in refusing to give the treating physician's opinion controlling weight. His decision not to obtain a neurological consultation as recommended by the ME was not error when he obtained an orthopedic consultation, and there was no ambiguity regarding Claimant's seizure disorder and leg pain. The ALJ's misinterpretation of Claimant's testimony regarding her wrist pain was harmless. Moreover, the ALJ's hypotheticals to the VE were proper, and his failure to discuss the a hypothetical answer based on facts he did not credit was not error. Finally, this Court does not have jurisdiction to remand or reverse the ALJ based on facts not in the record at the time he made his decision. For the aforementioned reasons, the **Claimant's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The decision of the ALJ is affirmed.**

**SO ORDERED THIS 16TH DAY OF JUNE, 2003.**

**MORTON DENLOW**
**United States Magistrate Judge**

29

**Copies mailed to**:

John E. Horn
16710 Oak Park Avenue
Tinley Park, IL 60477

Attorney for Claimant

James Peter Fieweger
UNITED STATES ATTORNEY'S OFFICE
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Edward Kristof
Jessie A. Wang-Grimm
SOCIAL SECURITY ADMINISTRATION
200 West Adams Street
30th Floor
Chicago, IL 60606

Attorneys for Commissioner